Filed 10/11/23  D'Aguiar v. City of Campbell CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FLOYD D'AGUIAR,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF CAMPBELL et al.,<br><br>    Defendants and Respondents. | H050663<br>(Santa Clara County<br>Super. Ct. No. 21CV376818) |

Floyd D'Aguiar, proceeding as a self-represented litigant, sued the City of Campbell (City) and other entities and individuals involved in the City's affordable housing program.  He contends they improperly terminated him from the affordable housing program and evicted him from his apartment after they refused to accept alternative documentation to establish his continuing eligibility for the program.

D'Aguiar appeals from orders of the trial court sustaining without leave to amend demurrers to his complaint, denying his motions for reconsideration, and imposing sanctions.  He also attacks other aspects of the proceedings in the trial court, including rulings on discovery and the impartiality of the bench officer who issued many of the challenged orders.

We reverse one of the sanctions orders but otherwise affirm the judgment.

# I. FACTS AND PROCEDURAL BACKGROUND

A. *Factual Background*[1]

In 2016, D'Aguiar rented a subsidized apartment from Alvin's Corner at Penny Lane, LLC (Alvin's) through the City's Below Market Rate housing program (BMR program). The lease was for a period of 12 months and thereafter became a month-to-month tenancy. The lease D'Aguiar signed states that his unit "has been approved for sale to the public as a condominium." D'Aguiar signed a condominium notice that stated that he would be notified at least 90 days prior to any "offering to sell." (Capitalization omitted.)

Participation in the BMR program depended on an initial certification of financial eligibility and subsequent annual recertifications over which the City had final approval. Alvin's certified D'Aguiar's eligibility when he moved into the rental unit in 2016. Thereafter, Housekeys, Inc. (Housekeys) administered the BMR program.

The rental application guide for the BMR Program states that "all BMR tenants shall be recertified once per year, at the end of the lease term, for compliance with all [p]rogram requirements including, but not limited to income . . . ." It also states that "[r]efusal by tenant to promptly provide all required documents for re-certification will result in a 60-day [t]ermination of lease and a [n]otice to [v]acant [*sic*] will be sent out."

With respect to exception requests, the guide states, "Households or individual applicants unable to produce any particular document required in the application form for legitimate reasons beyond their control (natural disaster, military service, refugee status, domestic violence, witness protection program, disability etc.) may request an exception for that particular document. [¶] Upon such request, [a]dministrator may request a

---

[1] In reviewing a trial court order sustaining a demurrer, "we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.)

reasonably equivalent alternative document, and/or any additional supporting documentation deemed necessary by the [p]rogram [p]rocess and [p]rogram [u]nderwriter to verify eligibility of the [a]pplicant . . . . [¶] . . . The [a]dministrator may approve or deny such request. If denied, [a]pplicants may submit an appeal of such denial to the City."

In 2017, 2018, and 2019, D'Aguiar declined, based on his concerns about identity theft and financial privacy, to give Housekeys documentation the organization required for recertification. D'Aguiar instead provided "alternate documentation" (i.e., redacted financial statements and IRS tax transcripts) that he created.

In September 2019, Alvin's served on D'Aguiar a "60-Day Notice to Quit," which asserted his tenancy was being terminated for violating the BMR program guidelines based on his refusal to provide unredacted financial documents. D'Aguiar contacted a representative for Alvin's and offered to show his financial statements to an employee at the City, but his offer was rejected. D'Aguiar did not vacate the apartment within 60 days.

In November 2019, Alvin's filed in Santa Clara County Superior Court an unlawful detainer action against D'Aguiar. Alvin's moved for summary judgment, and in January 2020 the trial court held a contested hearing on the motion. D'Aguiar appeared and represented himself. Alvin's argued that D'Aguiar was guilty of unlawful detainer under Code of Civil Procedure,[2] section 1161, subdivision 1.[3] D'Aguiar responded that the unlawful detainer action was "abusive and frivolous" and asserted he was a victim of identity theft. The court granted Alvin's summary judgment motion "on possession only." In February 2020, D'Aguiar surrendered possession of the property.

_____

[2] Unspecified statutory references are to the Code of Civil Procedure.
[3] Under this subdivision, a tenant of real property is guilty of unlawful detainer where he or she " 'fails to vacate after their termination as an employee, agent, or licensee.' " (*65283 Two Bunch Palms Building LLC v. Coastal Harvest II, LLC* (2023) 91 Cal.App.5th 162, 168.)

3

D'Aguiar received a demand for past-due payments related to the unit, but he disputed the amount owed.  In June 2020, certain of the defendants referred the matter of the owed balance to a collection agency (I.Q. Data International, Inc. (IQ Data)), which thereafter reported the debt to credit reporting agencies, adversely affecting D'Aguiar's credit rating.

B.  *Complaint and First Amended Complaint*

In January 2021, D'Aguiar, representing himself, filed a complaint asserting five causes of action against the City, Julius Nyanda (the owner of Housekeys) and Mark Robson (the owner of Alvin's).[4]  The trial court sustained initial demurrers to the complaint brought by the City, Nyanda, and Robson, and granted D'Aguiar leave to amend certain of his causes of action but not others.

On December 27, 2021, D'Aguiar filed a 114-page, first amended complaint alleging 27 causes of action (the operative complaint).

The first amended complaint names the City, Housekeys, Nyanda (individually and as trustee of the "NNN Trust"), Robson, Robson Properties, Inc. (Robson Properties), and Alvin's (collectively, defendants).  It alleges that Robson was the alter ego for Alvin's, and Nyanda (individually and as trustee of the "MMMM Trust") was the alter ego for Housekeys.

The first amended complaint generally alleges that defendants wrongfully evicted D'Aguiar from his subsidized apartment, committed various torts, and violated his federal and state constitutional and statutory rights.  It asserts Housekeys should have created a third-party verification system for tenant financial information and that its demand for unredacted financial information caused him extreme emotional distress.

The first cause of action is titled "due process violation"; "breach of the implied covenant of good faith & fair dealing" and "tortious interference with contract and/or

_____

[4] The complaint named Nyanda both individually and "dba Housekeys"; it also named Robson individually and "dba Alvin's Corner at Penny Lane, LLC."

4

economic advantage" (against City, Housekeys, Alvin's, and Robson Properties) (first cause of action). (Capitalization omitted.)

The second cause of action is titled "breach of quiet enjoyment" and "private nuisance" (against the City, Housekeys, Alvin's, and Robson Properties) (second cause of action). (Capitalization omitted.)

The third cause of action is titled "negligence and negligent infliction of emotional distress" (against Housekeys, Alvin's, Robson, and Nyanda) (third cause of action). (Capitalization omitted.)

The fourth cause of action is titled "unfair business practice" in violation of "California Business and Professions Code [sections] 17200, et seq., 17500" and violation of "Consumer Legal Remedies Act [Civil Code] [section] 1750 et seq." (against Housekeys, Alvin's, and Robson). (Some capitalization omitted.)

The fifth cause of action is titled "unfair business practices and intentional misrepresentation of facts" (against all defendants). (Capitalization omitted.)

The sixth cause of action involves "multiple counts" (capitalization omitted) and alleges violations of Civil Code sections 51, 52, 52.1 and article 1, section 7 of the California Constitution (against all defendants).

The complaint groups the seventh through tenth causes of action together and alleges violations of federal and California credit reporting statutes, violation of Civil Code section 1950.5 for "wrongful retention" (capitalization omitted) of his security deposit, and violations of Civil Code sections 1785 et seq. and 1788 et seq. These four causes of action are asserted against the City, Housekeys, Alvin's and Robson Properties. Additionally, as to these causes of action, the complaint mentions a number of non-parties: Two credit reporting agencies (Experian and TransUnion), a collection agency (IQ Data), Brian Skarbek (Alvin's attorney in the unlawful detainer action), and Jeffrey Cristina, a former council member of the City who D'Aguiar alleges threatened him "to submit un-redacted financial statements or be evicted."

5

The eleventh and twelfth causes of action are titled "retaliation in violation of C[ivil] C[ode] [section] 1942.5, [subdivisions] (a) [and] . . . (d)" and "retaliation in violation of California Consumer Privacy Act [Civil Code] [section] 1798.185" (against all defendants).  (Some capitalization omitted.)

The thirteenth cause of action is for unjust enrichment (against the City, Housekeys, Alvin's, and Robson Properties).

The fourteenth cause of action is for negligence (against all defendants).

The fifteenth cause of action is a "claim for exemplary damages" for "retaliation and discrimination" (against all defendants).  (Capitalization omitted.)

The sixteenth cause of action is for abuse of process (against the City, Housekeys, Alvin's, and Robson Properties).

The seventeenth cause of action is for conversion (against the City, Housekeys, Alvin's, and Robson Properties).

The complaint groups the eighteenth, nineteenth, twentieth, twenty-first, and twenty-second causes of action together and generally alleges that defendants violated D'Aguiar's due process rights under the United States Constitution and that he had "the right to due process for income/asset verification for affordable housing or housing in general," and it was unlawful for defendants to have evicted him without good cause.  He further alleges that the City, Housekeys, Alvin's and Robson Properties failed to make reasonable accommodations and discriminated against him by not allowing him to provide alternative financial documentation.

The complaint groups together the twenty-third, twenty-fourth, and twenty-fifth causes of action, which relate to retaliation claims under the California Fair Employment and Housing Act.

The twenty-sixth cause of action is titled "government liability for failure to perform mandatory duty" (against all defendants) and cites to Government Code section

6

815.6 and the due process clauses under the United States and California Constitutions. (Capitalization omitted.)

The twenty-seventh cause of action is titled "wrongful termination of affordable housing in violation of public policy" (against the City, Housekeys, Alvin's, and Robson Properties). (Capitalization omitted.)

The complaint's prayer for relief requests significant damages (including punitive damages) and other penalties, costs, fees, and expenses. It also seeks injunctive relief.

C. *Request for Preliminary Injunction*

In December 2021, D'Aguiar filed a motion for preliminary injunctive and declaratory relief related to his credit score and credit file. On March 28, 2022,[5] the trial court issued a written order denying D'Aguiar's motion for preliminary injunctive and declaratory relief. On April 19, defendants served D'Aguiar with a notice of entry of the order.

D. *Demurrers and Orders Sustaining Demurrers to First Amended Complaint*

1. Demurrers

Defendants Nyanda and Robson demurred to the first amended complaint. The City separately demurred.

Among other grounds, Nyanda, Robson, and the City asserted that the causes of action were barred by principles of res judicata stemming from the unlawful detainer action and/or were invalid for failing to state facts entitling D'Aguiar to relief. Housekeys, Robson Properties, and Alvin's also filed a demurrer to the entire first amended complaint on similar grounds.

Defendants filed requests for judicial notice asking the trial court to take judicial notice of a number of documents, including court records and a reporter's transcript from the unlawful detainer action, the City's inclusionary housing ordinance, and the

---

[5] Unless otherwise indicated, all dates occurred in 2022.

inclusionary housing agreement recorded with the Santa Clara County Recorder's Office in 2013.

On June 24, D'Aguiar filed a motion for leave to file a proposed second amended complaint. D'Aguiar sought to add four defendants and raise additional claims.

### 2. June 29 Order on Demurrers by the City and Nyanda and Robson

On June 29, the trial court issued a written order sustaining the City's and Nyanda's and Robson's separate demurrers to the first amended complaint (June 29 demurrer order).

The trial court addressed D'Aguiar's argument that his second amended complaint mooted defendants' demurrers. The court decided D'Aguiar's second amended complaint was improper under section 472, subdivision (a), because he had filed it without leave of court and defendants had not stipulated to it. Additionally, D'Aguiar had failed to meet and confer with defendants. Based on its conclusion that D'Aguiar was not entitled to file the second amended complaint, the court ruled that the proposed complaint did not moot the demurrers.

The trial court granted the defendants' request to take judicial notice of documents, including the court records and transcript related to the unlawful detainer action.

The trial court sustained the City's demurrer to the second cause of action (for breach of quiet enjoyment and private nuisance), eleventh cause of action (for retaliation in violation of Civil Code, section 1942.5), the seventeenth cause of action (for conversion), and the twenty-seventh cause of action (wrongful termination of affordable housing) on the grounds that they were barred by principles of res judicata. The court found that those claims arose out of the right of possession that was litigated in the unlawful detainer action.

As to the remaining causes of action asserted against the City, the trial court sustained the City's demurrer for failure to state sufficient facts. For example, addressing

8

the twenty-sixth cause of action against the City for "Government Liability for Failure to Perform Mandatory Duty," (underscoring omitted) the trial court sustained the demurrer for failure to state a cause of action. The court determined that although the City was a public entity, the complaint failed to allege the City "had a mandatory statutory duty to verify Plaintiff's income and assets for BMR recertification with redacted financial statements" and that, while D'Aguiar alleged the City violated Government Code section 12955, the statute did not impose a mandatory duty.

Regarding Nyanda's and Robson's demurrer, the trial court did not rest its decision on res judicata principles because the claims barred by res judicata had not been asserted against either Nyanda or Robson. The court instead concluded that the complaint failed to state sufficient facts as to Nyanda and Robson to justify piercing the corporate veil and imposing personal liability on them. It found there were no facts alleged that Robson or Nyanda were alter egos of either Alvin's or Housekeys. It further found the third cause of action (for negligence and negligent infliction of emotional distress) failed to allege facts sufficient to support the element of duty and, additionally, failed to allege any violation of the statute cited in the complaint related to the cause of action (Civ. Code, § 1942.5). It also sustained the demurrer to the remaining causes of action.

The trial court denied D'Aguiar leave to amend, finding he had not met his burden of showing how any amendment would cure the defects identified in his first amended complaint.

9

### 3. July 19 Hearing and July 20 Order

On July 19, the trial court held a hearing on the demurrer filed by Housekeys, Robson Properties, and Alvin's. The hearing was not reported.[6] D'Aguiar and defense counsel appeared telephonically.

The following day, the trial court issued a written order sustaining the demurrer. In the July 20 order, the court engaged in analysis and reached conclusions similar to those in the June 29 demurrer order. For example, the court determined principles of res judicata prohibited D'Aguiar from relitigating the unlawful detainer action in the current civil action. The court generally found the first amended complaint did not allege sufficient facts for the alleged causes of action.

The trial court denied D'Aguiar leave to amend, stating he had been given the opportunity to amend but "has not yet been able to state a valid cause of action" and has not explained how any amendment "will change the legal effect of his pleading."

The trial court did not issue a judgment after sustaining defendants' demurrers. On August 11, defendants submitted to the trial court by e-mail a proposed judgment of dismissal. The e-mail in the record indicates D'Aguiar received a copy of it. Defendants also filed a motion for a judgment of dismissal. A minute order from a December 8 hearing indicates that the court granted defendants' motion for a judgment of dismissal and ordered them to prepare the order.

The trial court did not enter judgment against D'Aguiar until April 11, 2023.

### E. *Motions for Reconsideration*

On July 11, D'Aguiar filed a motion for reconsideration of the June 29 demurrer order. He argued that reconsideration was appropriate based on new facts, including his submission of a proposed second amended complaint.

---

[6] The only reporter's transcript in the record from any proceedings in this matter is of the March 2022 hearing on D'Aguiar's motion for a preliminary injunction and declaratory relief.

10

On August 15, D'Aguiar filed a motion for reconsideration of the July 20 demurrer order. His motion attached a number of exhibits, including a proposed second amended complaint, which listed 37 causes of action and sought to add four defendants (Brian Skarbek, Woodmont Real Estate Services, L.P., IQ Data, and Jeffrey Cristina).[7]

The August 15 motion requested that the court vacate its July 20 order and grant D'Aguiar leave to amend and to file the proposed second amended complaint. In addition to attaching a proposed second amended complaint, D'Aguiar submitted other documents, including e-mails between himself and defendants' counsel. D'Aguiar also attached certain discovery responses that he asserted he received from defendants on June 30.

The documents contained e-mails between D'Aguiar and Housekeys (the BMR program administrator) that include a notice from Housekeys to D'Aguiar that he must submit required documentation for recertification in the program and an e-mail from D'Aguiar stating he had offered to show "missing financial statements" to an individual "at the City with no copies" so that "she could verify that [his] notarized statements of July 6, 2019[,] were accurate."

On September 8, in advance of the September 13 hearing, D'Aguiar submitted to the trial court a request for judicial notice, pursuant to Evidence Code sections 452 and 453, relating to memorandum opinions filed in 2012 and 2013 in a federal court case from a district court in Maryland titled *Daniels v. Housing Authority of Prince George's County, et al.*, No. 11-cv-02938-AW.

---

[7] The trial court characterized this motion as an amended motion for leave to file a second amended complaint. It noted that D'Aguiar had filed a motion for leave to file a second amended complaint on June 24 and an amended motion for leave to file a second amended complaint on August 1.

F.  *September 13 Hearing and Orders*

On September 13, the trial court held an unreported hearing on motions filed by D'Aguiar.  D'Aguiar did not appear.

The minute order states that the trial court adopted its tentative ruling—which the court noted no one had contested—and denied D'Aguiar's motions for reconsideration.

The trial court found D'Aguiar had failed to present any new facts, evidence, or circumstances supporting reconsideration of the demurrer orders.  It denied D'Aguiar's request for judicial notice of the documents from the Maryland case for lack of relevance.

The trial court also addressed D'Aguiar's request for relief pursuant to section 473 and denied it, finding D'Aguiar had not met the statutory requirements.

With respect to the request to file a second amended complaint, the court reiterated its prior conclusions (as stated in its June 29 and July 20 demurrer orders) that the filing of a second amended complaint was improper because D'Aguiar had failed to obtain leave to amend and the defendants had not stipulated to the filing of a second amended complaint.

Turning to the amended motion for leave to file a second amended complaint, the court stated it had fully considered the second amended complaint in connection with its demurrer orders.  It viewed the "present hearing of the motion for leave to file [the second amended complaint] is in substance a motion for reconsideration of the rulings denying plaintiff leave to amend to file [the second amended complaint]."  It found the motion for leave asserted similar "grounds" as those asserted in the motions for reconsideration and "similarly fails to show new or different facts, circumstances or law that calls into question" the demurrer orders.  It therefore denied the motion for leave to amend.  Alternatively, it denied the motion as moot because it had denied leave to amend in the demurrer orders.

12

G. *Discovery and Defendants' Motion for a Protective Order*

Following the trial court's orders sustaining the demurrers without leave to amend, D'Aguiar propounded discovery on defendants. For example, in early July, following the June 29 order, D'Aguiar served form interrogatories on Alvin's, Robson Properties, Housekeys, and the City. He also served a request for production of documents on the City.

On August 5, defendants filed and served a motion for a protective order restricting discovery and requested sanctions for D'Aguiar's abuse of the discovery process. Defendants submitted a declaration from their attorney, Grant Turner, in support of their motion and sanctions request.

On November 3, the trial court granted the motion for protective order and sanctions based on D'Aguiar's abuse of the discovery process. The minute order dated November 3 summarized the sequence of the discovery requests made by plaintiff and concluded there was no basis for D'Aguiar to serve the discovery or compel further responses, because he had "no viable causes of action or claims . . . against any defendant in this action."

The trial court found the evidence supported defendants' claim that D'Aguiar had abused the discovery process and ordered D'Aguiar to pay to defendants $2,244 in attorney fees as sanctions on or before December 15.

H. *Judicial Disqualification Motion*

On November 3, D'Aguiar filed a motion to disqualify Judge Takaichi, who had issued the rulings on the demurrers and motion for reconsideration. D'Aguiar asserted that Judge Takaichi was prejudiced against him but did not provide any further details other than stating that he had presided over motions in which defendants had prevailed. D'Aguiar appended a declaration to his motion, but the declaration did not contain any substantive information other than an attestation. The trial court denied the request for disqualification as untimely.

13

I. *Defendants' Motions for Sanctions Pursuant to Section 128.7*

Following D'Aguiar's motions for reconsideration, defendants filed two motions for sanctions under section 128.7.

On July 26, defendants electronically served on D'Aguiar (1) a notice of motion and motion for sanctions against him; (2) a memorandum of points and authorities supporting defendants' motion for sanctions; (3) the declaration of Grant Turner supporting defendants' motion for sanctions; and (4) proof of electronic service.[8]

On August 19, defendants filed a notice of motion and motion for sanctions pursuant to section 128.7 (first sanctions motion). They sought expenses and fees in the amount of $5,764, asserting that D'Aguiar's July 11 motion for reconsideration was frivolous and designed to cause delay and increase defendants' litigation costs.

In support of their first sanctions motion, defendants submitted a declaration by their attorney, Grant Turner. The declaration detailed various events in the litigation as well as communications between Turner and D'Aguiar. The declaration attached an e-mail exchange between Turner and D'Aguiar, in which D'Aguiar requested that defendants "withdraw [their] [d]emurrer [m]otion." After Turner refused his request, D'Aguiar wrote to Turner that he would be filing a "[m]otion for [r]econsideration of [o]rder of 06/2022, in a few days" and that, if the demurrer hearing on July 19 "goes the same way" "a [m]otion for [r]econsideration for that order will follow."

Turner stated defendants had incurred attorney fees in the amount of $5,764 for responding to the July 11 motion for reconsideration, attending the hearing on the motion for reconsideration and motion for sanctions, and for preparing the motion for sanctions.

The first sanctions motion was supported by a memorandum of points and authorities that asserted D'Aguiar's motion for reconsideration was frivolous. The

---

[8] This court, by order dated March 1, 2023, granted defendants' request to augment the record with the July 26 proof of service, filed with the trial court on August 19, relating to the first motion for sanctions.

memorandum argued the requested sanctions would deter D'Aguiar from "filing additional frivolous motions."

On August 3, defendants electronically served on D'Aguiar defendants' notice of motion and motion for sanctions, a memorandum of points and authorities supporting defendants' motion for sanctions, the declaration of Grant Turner supporting defendants' motion for sanctions, and proof of electronic service (second sanctions motion).

On August 26, defendants filed the second sanctions motion requesting that the trial court sanction D'Aguiar under section 128.7 in connection with the second motion for reconsideration. The second motion sought $5,148 in attorney fees. The motion was supported by a declaration from Turner.

D'Aguiar denied engaging in bad faith actions or tactics or making any frivolous arguments. His written opposition further requested that sanctions be imposed on defendants pursuant to section 128.7.

In their reply, defendants referred to D'Aguiar as a "vexatious litigant." They urged the trial court to grant the first sanctions motion but sought withdrawal of their second sanctions motion. In a footnote, defendants explained that they did not incur fees in responding to D'Aguiar's second motion for reconsideration because the court had denied it before they filed an opposition. Therefore, defendants "requested withdrawal of [their] [m]otion for [s]anctions in connection with [the second motion for reconsideration]."

Defendants argued that D'Aguiar's own request for sanctions under section 128.7 was frivolous and failed to comply with the relevant statutory requirements.

On December 8, the trial court held a hearing on defendants' motion for sanctions.[9]

---

[9] The record on appeal does not contain a reporter's transcript of this hearing.

15

On December 16, the trial court issued a written order that granted both motions for sanctions pursuant to section 128.7 and did not address defendants' request to withdraw the second sanctions motion.

The trial court found D'Aguiar's motions for reconsideration were frivolous. It also found that the declarations of defendants' attorney and "e[-]mail exchanges between the attorney and plaintiff" evidenced that D'Aguiar's goals in filing the motions for reconsideration were to harass defendants and that his conduct violated the provisions of section 128.7, subdivisions (b)(1) and (b)(2). The court rejected D'Aguiar's contention that the sanctions motions were prematurely filed under the " 'safe harbor' " provision of section 128.7, subdivision (c)(1).

The trial court ordered D'Aguiar to pay to the City, Nyanda, and Robson attorney fees of $5,764, the amount requested in defendants' first motion for sanctions.

Further, the trial court ordered D'Aguiar to pay attorney fees of $5,148 (the amount requested in defendants' second sanctions motion) payable to Housekeys, Robson Properties, and Alvin's.

J. *Subsequent Proceedings*

On December 22, D'Aguiar filed a notice of appeal.

In January 2023, D'Aguiar filed a petition in this court for writ of supersedeas, mandate, prohibition, or other appropriate relief and a request for stay related to the discovery sanctions (of $2,244) and the December 16 sanctions (totaling approximately $10,000). On February 15, 2023, this court denied his petition and request for a stay.

On April 12, 2023, while the present appeal was pending, the trial court entered a judgment of dismissal in favor of defendants.[10]

---

[10] D'Aguiar submitted the judgment of dismissal in connection with his request for judicial notice filed April 17, 2023. As noted further below (see pt. II.B., *post*), we deem the record augmented with the judgment of dismissal.

The judgment of dismissal reaffirmed the June 29 and July 20 rulings sustaining the demurrers as to D'Aguiar's first amended complaint without leave to amend, the November 3 order granting defendants' motion for a protective order and sanctions in the amount of $2,244, and the December 16 order granting sanctions of $5,764 and $5,148.

## II.  DISCUSSION

On appeal, D'Aguiar primarily challenges the December 16, 2022 sanctions order, the trial court's determinations that he failed to plead viable claims against defendants in his first amended complaint, and its denial of his motion to file the second amended complaint.

Additionally, D'Aguiar challenges a number of other orders, including those denying his motions for reconsideration of the demurrer rulings and granting defendants' motion for a protective order and related discovery sanctions.

More generally, he renews his claim of bias by the bench officer who sustained defendants' demurrers, denied his motions for reconsideration, and imposed sanctions.

A. *Jurisdiction*

D'Aguiar's December 22 notice of appeal states his appeal is taken from the December 16, 2022 sanctions order.  Additionally, his notice of appeal checks the preprinted box "[o]ther" and lists the following orders and information:  "Demurrers 06/29/2022, 07/20/2022, MFPO [Minute Order] 11/04/2022, Judgment of Dismissal [Minute Order ]12/08/2022  [¶]  Plt's [*sic*] MFR 1&2, MFLA 1&2 [Minute Orders] 09/13/2022, PLT's Mtn4 [*sic*] Prelim [*sic*] I&D Relief Ord [*sic*] 3/28/2022 –CCP §906, §908, §473."

D'Aguiar timely appealed from the December 16, 2022 order imposing $10,912 in sanctions, which is an appealable order.  (See § 904.1(a)(12).)

17

D'Aguiar's notice of appeal also specifies the March 28 order denying his request for a preliminary injunction. However, the appeal of that order is not timely.[11] An order refusing to grant an injunction is an appealable order. (See § 904.1, subd. (a)(6); see also *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 ["An order denying a preliminary injunction is an appealable order."].) "A party has a maximum of 180 days to appeal from when an appealable order is entered into the minutes. (Cal. Rules of Court, rule 8.104(a)(1)(C), (c)(2), (e).)" (*Faunce v. Cate*, at p. 170.) An untimely notice of appeal is an " 'absolute bar' " to appellate jurisdiction. (*Ibid.*)

D'Aguiar's appeal of the March 28 order was filed on December 22, nearly nine months after the order was entered, and nearly eight months after defendants filed and electronically served D'Aguiar with a notice of entry of the March 28 order, and is therefore too late. As we have no jurisdiction to consider the order denying his request for a preliminary injunction, we do not consider that portion of the appeal.

With respect to the remaining orders contained in the notice of appeal, his notice of appeal was filed before entry of the judgment of dismissal and the appealed orders are not separately appealable. (See, e.g, *Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069 ["An appeal can only be taken after the court enters judgment on the order sustaining the demurrer" although an appellate court can elect to construe an order sustaining a demurrer "without leave to amend" as a final appealable judgment].)

Although D'Aguiar filed his notice of appeal before entry of the judgment of dismissal, we will construe the appeal to have been taken from the judgment of dismissal

---

[11] We have reviewed the parties' supplemental briefing on the timeliness of D'Aguiar's appeal of the March 28 preliminary injunction order. The supplemental briefing confirms, for the reasons explained herein, that this court has no jurisdiction to review the March 28 preliminary injunction order. To the extent D'Aguiar's arguments related to the preliminary injunction order are cognizable in relation to the other orders he appeals and over which we have jurisdiction, we address those arguments in our analysis.

and will consider the merits of D'Aguiar's contentions. (See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1189–1190.)

B. *Requests to Augment the Record and for Judicial Notice*

D'Aguiar has filed in this court eight motions to augment the record and/or for judicial notice. As to his first motion, this court partially granted his motion as to three documents, including the August 11 letter from defense counsel to the trial court, but denied his motion without prejudice as to other documents. His second through sixth motions to augment were previously denied by this court.

On April 6, 2023, D'Aguiar filed a document titled "appellant's proof of service of notice to transmit exhibits to 6DCA to augment the record on appeal" that appended two exhibits. (Capitalization omitted.) Defendants opposed this motion. We deny this motion as unnecessary. The documents are either already in the record or were addressed in previous orders of this court. (See *Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 674, fn. 4 (*Adams*); *TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 146, fn. 3.)

On April 10, 2023, D'Aguiar filed a request that this court take judicial notice of 13 documents attached as exhibits. Exhibits 33 through 40 are e-mails among defendants, D'Aguiar, and the trial court sent between March 30 and April 3, 2023, regarding the e-filing of three pending orders. Exhibits 41 through 43 include the three proposed orders discussed in the e-mails in exhibits 34 through 37. Exhibits 45 through 47 are e-mails between D'Aguiar and defendants in which D'Aguiar raised his objections to the proposed orders. These e-mails are contained in previous motions to the court.

Defendants oppose D'Aguiar's requests, arguing the documents are either already in the record or are irrelevant because they were not before the trial court.

Several of these documents are already part of the appellate record, and we deny the request for judicial notice as to those documents. (See *Adams*, *supra*, 51 Cal.App.5th at p. 674, fn. 4.) However, the e-mails in exhibits 34 through 40, which were sent to the

19

trial court, are judicially noticeable court documents under Evidence Code section 452, subdivision (d) and are relevant. Therefore, we grant the request for judicial notice of the e-mails in exhibits 34 through 40. (See *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.)

The court also grants judicial notice of the proposed orders in exhibits 41 through 43 as court documents under Evidence Code section 452, subdivision (d).

The court denies D'Aguiar's request for judicial notice of the e-mails in exhibits 45 through 47 because they are either already in the record or are the subject of previous orders by this court.

On April 17, 2023, D'Aguiar filed a request that this court take judicial notice of six documents. Defendants did not oppose the request. Three of the documents attached to this request were filed in the trial court on April 12, 2023, and consist of the judgment of dismissal, the order denying D'Aguiar's motions for reconsideration related to the demurrer orders, and the order granting defendants' motion for protective order. As to these court-filed documents, we deem D'Aguiar's request as a motion to augment the record and, as such, grant the motion.

The other three documents consist of an e-mail which was included in a previously denied motion (exhibit 53) and two copies of the trial court register of actions (ROA) from April 5, 2023, and April 14, 2023 (exhibits 48 and 49 respectively). We deny the request to judicially notice the e-mail contained in exhibit 53 but grant the request to judicially notice the register of actions. (See *D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1492, fn. 8.)

Defendants filed three motions to augment the record in this appeal. On February 17, 2023, defendants requested that this court augment the record with three documents showing proof of service (exhibits A, B, and C). The court granted this request on March 1, 2023. Defendants filed a second motion to augment the record on July 12, 2023. This motion included three trial court documents (labeled exhibits A through C) which were filed on April 12, 2023: (A) Order re: Plaintiff's Motions for Reconsideration; Plaintiff's

20

Motion for Leave to File Second Amended Complaint; (B) Order Re: Defendants'
Motion for Protective Order Restricting Discovery and Imposing Monetary Sanctions;
and (C) Judgment of Dismissal [§ 581, subd. (f)(1)]. (Some capitalization omitted.)
These documents are the same as exhibits 50, 51, and 52 in D'Aguiar's second request
for judicial notice, filed on April 17, 2023. As this court has already granted judicial
notice of these documents, we deny defendants' second motion to augment. (See *Adams*,
*supra*, 51 Cal.App.5th at p. 674, fn. 4.) Defendants filed on September 18, 2023, a third
motion to augment the record in connection with this court's request for supplemental
briefing on the appealability of the March 28 preliminary injunction order. The motion
included a copy of the notice of entry of judgment or order, filed on April 19, of the
March 28 order on D'Aguiar's motion for preliminary injunctive and declaratory relief.
Because the notice of entry of order is relevant to the timeliness of the appeal of the
March 28 preliminary injunction order, we grant defendants' third motion to augment.

Finally, with respect to the record, D'Aguiar asserts there were "blank pages" in
the clerk's transcript and that he notified the superior court clerk, who resent the
corrected transcript. While he argues this was prejudicial error, he does not develop his
argument further. It is therefore forfeited on appeal.

C. *Motion to Stay*

On June 6, 2023, after the parties completed briefing in this appeal, D'Aguiar filed
a motion in this court titled "Appellant's Notice of Motion for New Trial and Pending
Subsequent Appeal." (Some capitalization omitted.) He states that he has filed a motion
for new trial in the trial court and that, pursuant to California Rules of Court, rule
8.108(b), he is entitled to "an extension of 30 days for a subsequent appeal of Judgment
of Dismissal, and any orders appealable thereof." He requests that "[i]n the interest of
consolidation, efficiency and costs" this court "wait for [his] subsequent [n]otice of
[a]ppeal and [r]equest/[m]otion to [c]onsolidate appeals."

We have interpreted his premature notice of appeal as taken from the judgment of dismissal and the parties have fully briefed the merits of this appeal. We therefore deny his motion to stay the appeal.[12]

D. *Principles of Appellate Review*

As the California Supreme Court has explained: "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

A self-represented litigant must also comply with the fundamental principles of appellate review. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

On appeal "the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised." (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649.) We may deem issues not raised or supported by legal authority as forfeited. (See *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 227.) "[C]onclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see *Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1018 [perfunctory arguments in appellate briefs will be deemed by the appellate court to be abandoned].)

---

[12] D'Aguiar subsequently filed a separate notice of appeal in *D'Aguiar v. City of Campbell, et al.* (No. H051185, app. pending). The notice of appeal in No. H051185 identifies the April 12, 2023 judgment of dismissal at issue in this appeal, as well as other orders, including at least one order that was filed in the trial court after judgment was entered.

22

We review only those issues that have been adequately raised and supported by D'Aguiar. "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); [citation].) When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] In addition, citing cases without any discussion of their application to the present case results in forfeiture. [Citations.] We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations]. [¶] Moreover, we do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier. [Citations.] This rule is based on considerations of fairness—withholding a point until the closing brief deprives the opposing party of the opportunity to file a written response unless supplemental briefing is ordered." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

E. *Orders Sustaining Demurrers*

D'Aguiar challenges the June 29 and July 20 orders sustaining defendants' demurrers. He asserts the orders must be reversed because he was denied a court reporter at the July 19 hearing, the trial court misapplied principles of res judicata to bar certain of his causes of action related to his eviction, and he should have been given leave to file a second amended complaint.

1. Lack of Court Reporter at the July 19 Hearing

D'Aguiar asserts the trial court violated his rights because it did not provide him with a court reporter for the July 19 hearing. He points to his request for a court reporter filed on June 23 and in advance of the July 19 hearing.

D'Aguiar has not shown prejudicial error. The record on appeal does not contain any reporter's transcript from this matter (other than a transcript for the March 8 hearing on D'Aguiar's request for a preliminary injunction.) On April 12, the trial court denied D'Aguiar's request to waive court fees (including reporter's fees). While he appears to

23

suggest in his briefing in this court that he is indigent, and therefore the court was required to provide him with a reporter, he provides no record citation for that finding and we therefore disregard it.

In any event, D'Aguiar has not established prejudicial error connected to the lack of a court reporter at the July 19 hearing. (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 799.) The minute order indicates that D'Aguiar participated in the hearing. He does not assert or explain how the lack of a reporter's transcript in the appellate record for the July 19 hearing prevents our review of his claims. As D'Aguiar himself acknowledges, we independently review the trial court's decision to sustain the demurrer. (See *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Accordingly, we decide he has not demonstrated reversible error on the basis that there was no court reporter at the July 19 hearing.

2.  Sufficiency of D'Aguiar's Causes of Action in the First Amended Complaint

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768 (*Mathews*).) " '[L]egal conclusions,' 'adjectival descriptions' . . . or 'unsupported speculation' " are insufficient to withstand a demurrer. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960; see also *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1550.) To establish adequate pleading, a plaintiff must show the facts

24

pleaded are "sufficient to establish every element of that cause of action." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879, italics omitted.)

D'Aguiar bears the burden of demonstrating the trial court erroneously sustained the demurrers. "This court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. Because a demurrer tests the legal sufficiency of a complaint, plaintiffs must show the complaint alleges facts sufficient to establish every element of each cause of action. If the complaint fails to plead, or if the defendants negate, any essential element of a particular cause of action, this court affirms the sustaining of the demurrers." (*Kamen v. Lindly* (2001) 94 Cal.App.4th 197, 201.) "The party against whom a complaint . . . has been filed may object, by demurrer" on the ground, among others, that the complaint "does not state facts sufficient to constitute a cause of action." (§ 430.10, subd. (e).)

On appeal, D'Aguiar's briefing is largely devoid of argument or legal authority demonstrating that the trial court erred in sustaining the demurrers to the first amended complaint. His briefing does not address the 27 causes of action asserted in his first amended complaint with any specificity. We "need not consider [] a perfunctory assertion [in a brief] unaccompanied by supporting argument." (*People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8.) As stated by one court, a "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the court will "treat the issue as abandoned." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

Although D'Aguiar's challenges on appeal to the demurrer orders can fairly be characterized as conclusory, we have conducted a de novo review of the 27 causes of action alleged in the complaint. We begin with the question whether any of the causes of action are barred by principles of res judicata.

D'Aguiar seems to argue he adequately pleaded a claim for wrongful eviction. As framed by D'Aguiar in this appeal, the eviction was unlawful because it was based on

"no cause" under section 1161, subdivision 1, and he asserts "good cause" was required for his eviction from the affordable housing program. Relatedly, he asserts he was never properly served with a " 'no cause' " eviction notice but rather was served with a 60-day termination notice alleging "at-fault" claims. Thus, he states he was never in unlawful possession of his unit because a proper notice was never served.

The trial court found that principles of res judicata precluded these claims generally and barred altogether the 2d, 11th, 17th, and 27th causes of action.

In this context, res judicata refers to claim preclusion. "Claim preclusion prevents relitigation of entire causes of action. [Citation.] Claim preclusion applies only when 'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 326–327.) "As applied to questions of preclusion, privity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit. [Citation.] A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's ' " 'virtual representative' " ' in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 826 (*DKN Holdings*).)

In unlawful detainer actions, "affirmative defenses are permissible only to the extent that they would, if meritorious, preclude a court from removing a tenant from the premises." (*Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 491.) "An unlawful detainer judgment has a limited res judicata effect because the claim preclusion aspect of the res judicata doctrine applies only to matters that were raised or could have been raised in the earlier action on matters that were litigated or litigable." (*Ibid*.)

The unlawful detainer action was between D'Aguiar and Alvin's. The trial court in that action granted summary judgment to Alvin's and ordered that Alvin's "have and recover from [D'Aguiar], judgment for restitution of possession of [the unit], together

26

with rent in the sum of $1,731.40."  The court found that Alvin's "has established by competent declaration all the elements of a cause of action in unlawful detainer, and [D'Aguiar] has failed to establish by competent counter declaration any facts that would establish a triable issue of fact requiring a trial."  Moreover, Alvin's and the City's interest in the eviction of D'Aguiar from the apartment for failing to comply with the BMR program were so similar that they were in privity for purpose of the claim preclusion analysis.  (See *DKN Holdings*, *supra*, 61 Cal.4th at p. 826.)  To the extent that D'Aguiar's claims rest on the premise that he should not have been removed from the apartment, claim preclusion bars them.

Although D'Aguiar states in his briefing in this court that he is not relitigating the underlying unlawful detainer action and not seeking restitution of possession, in fact he does attempt to relitigate issues that were addressed (or could have been addressed) in the unlawful detainer action.  For example, he contends the City lacked "good cause" to evict him and that he was "illegally evicted."

On appeal, D'Aguiar appears to argue he did not have a meaningful opportunity to litigate certain issues in the unlawful detainer action.  D'Aguiar focuses on his allegation that the notice to terminate his lease stated he was being evicted " 'for cause,' " but that at the unlawful detainer hearing, the landlord prevailed under the provision that allows for eviction at the expiration of the lease.  He asserts the notice to terminate for cause was "invalid."

D'Aguiar appeared in the unlawful detainer proceeding, contested the issues— tendering his theory that his status as an identity theft victim justified withholding or providing alternative financial documentation notwithstanding the program's requirement—and lost on the merits.  D'Aguiar's arguments against the application of res judicata, although phrased in a variety of ways, amount to a disagreement with the ruling in the unlawful detainer action.  His citation to *2710 Sutter Ventures, LLC v. Millis* (2022) 82 Cal.App.5th 842, 866 does not assist him.  While that case involves a landlord

and tenant dispute, the appeal arose from the unlawful detainer action where the trial court made a finding that the notice terminating the tenancy was defective. (*Id.* at p. 847.) By contrast here, D'Aguiar is attempting to relitigate, via a civil action, claims against his former landlord (Alvin's) that he could have raised in the unlawful detainer action.

D'Aguiar asserts the public interest exception to res judicata but does not explain why it would apply here. We agree that courts can decline to apply the doctrine of claim preclusion in particular cases where application of the doctrine is not in the public interest. However, " '[t]he public interest exception is an extremely narrow one . . . and is only to be applied in exceptional circumstances.' " (*Grove v. Juul Labs, Inc.* (2022) 77 Cal.App.5th 1081, 1097.) This private dispute, which does not involve statewide issues of public importance (see *ibid.*), does not call for application of the public interest exception to claim preclusion.

We reject D'Aguiar's contention on appeal that the trial court erred in relying on res judicata to sustain the demurrers to the 2d, 11th, 17th, and 27th causes of action, relating to his right to possession of the unit. (See *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1332.)

Even assuming the trial court erred as to its application of claim preclusion, we have reviewed the remaining causes of action in the first amended complaint and conclude none states facts sufficient to state a cause of action.

D'Aguiar contends that defendants were required to use a third-party verification system to determine his income for purposes of recertification of financial eligibility for the BMR program. But nowhere does he provide any constitutional, statutory, or obligation grounded in contract that, on these facts, any of the defendants had such an obligation. The inclusionary housing ordinance contains no such requirement. The cases he cites, such as *Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 671

28

(deciding the antideficiency protection of Code of Civil Procedure section 580b applies to short sales as well as foreclosure sales), are inapplicable.

His assertions on this point amount to no more than contentions, deductions or conclusions of fact or law, which are insufficient to survive demurrer. For example, he alleges that the defendants "maliciously modified their BMR rental guidelines [citation] to coerce and harass [p]laintiff to submit un-redacted financial documentation for rent subsidy recertification. Plaintiff was denied his [c]onstitutional financial privacy rights— Plaintiff an identity theft victim was denied his rights to submit alternate documentation for [i]ncome/[a]sset verification." D'Aguiar provides no elaboration on his allegation of malice and he fails to identify the source of his "right" to "submit alternate documentation."

The general rule is that facts in support of each of the requirements of a statute upon which a cause of action is based must be specifically pled. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 604.) D'Aguiar's first amended complaint is characterized by invective and broad claims of wrongdoing but these are largely unmoored to the facts provided.

The facts that are contained in the complaint or are otherwise present in the record are either unhelpful to D'Aguiar or undermine his claims. For example, his assertions of false representation that he did not know the apartment was eligible for purchase are contradicted by the lease itself, which states that the unit "has been approved for sale to the public as a condominium." The condominium notice he received stated he would have the right of first refusal if the unit were to be sold.

D'Aguiar asserts in various forms violation of his right to privacy to his financial information. However, by voluntarily participating in the BMR program, he agreed to provide his financial information. The program rules make clear that a participant in the program could ask for an exception to the requirement to provide documents, but

approval was discretionary.  D'Aguiar did not plead or make a case for such an exception.

" '[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following:  (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 42–43.)  " 'Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.' " (*Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1098.)  We conclude that, as a matter of law, D'Aguiar has failed to state a cause of action for invasion of his state constitutional privacy interest because he did not adequately plead facts supporting a conclusion that any expectation of privacy as to his financial condition would be reasonable in the context of the BMR program, where financial eligibility is a condition of continuing participation in the program.  (See *Heller*, at p. 43.)

D'Aguiar argues due process violations but does not articulate the substance of the violations.  He does not allege facts that would support a conclusion that he was discriminated against as a member of any protected class.  While D'Aguiar cites in the first amended complaint *Anchor Pacifica Management Co. v. Green* (2012) 205 Cal.App.4th 232, that case does not establish that he has adequately pleaded a violation of his due process rights.  In *Green*, the tenant was evicted merely upon the expiration of her lease in a housing complex in which the court concluded the city had "fostered the [tenant's] expectation she had an entitlement to a continued subsidized tenancy." (*Id*. at p. 247.)

D'Aguiar's complaint does not contain similar facts—nor could it in light of the undisputed fact that D'Aguiar's tenancy was terminated because he had failed to provide required documentation, and he was warned on multiple occasions that he would be

30

unable to participate in the BMR program if he failed to provide the required documents. D'Aguiar asserts he had a right to provide the information in a different way (or, alternatively, that the defendants had a duty to provide a "third-party verification system" for the information), but he does not identify any source in law of that right or duty.

D'Aguiar's negligence cause of action states that defendants "owed a duty of care pursuant to state and local laws/codes, not to violate [p]laintiffs [*sic*] [c]ivil, [f]inancial [p]rivacy, [c]onstitutional [d]ue [p]rocess rights. All [defendants] violated said duty, throughout their respective terms of management/oversight, by creating [a] harassing and intimidating environment to exist during the tenancy of [p]laintiff." However, beyond the general contention that defendants owed him a duty of care, D'Aguiar does not present sufficient facts showing they owed such a duty.

D'Aguiar also appears to agree that he did not comply with the documentation requirements needed to verify his claimed income and to qualify him for the affordable housing program. "While the allegation of performance 'can be satisfied by allegations in general terms' [citation], 'excuses must be pleaded specifically.' " (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367.) Although D'Aguiar seeks to justify his lack of compliance on a number of grounds, including his right to privacy, he has not persuaded us that he has asserted viable claims in this civil action. Moreover, D'Aguiar cannot show as a matter of law that the requirement that he provide complete, unredacted financial information to demonstrate financial eligibility in a below-market rate program was immaterial. (Cf. *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 87 [failure to provide proof of renter's insurance over a "handful of days" immaterial where evidence shows landlord had failed to enforce the insurance requirement over a period of 15 years].) D'Aguiar acknowledges that he failed to provide the required information. He believes that he should have been able to provide similar information in a different way but does not identify with any specificity or citation to authority the source of that right.

31

As to the other many causes of action alleged in the first amended complaint that the trial court discussed on their merits, we are not persuaded the trial court erred. Having independently reviewed the record, we agree that D'Aguiar failed to show any viable claims based on the facts. His first amended complaint—while lengthy—largely consists of conclusory statements of fact and law that we are not required to accept.

We reject D'Aguiar's arguments that the trial court erred in sustaining defendants' demurrers.

### 3. Leave to Amend

D'Aguiar contends the trial court erred in denying him leave to file a second amended complaint. The proposed second amended complaint is 233 pages long and alleges 37 causes of action.

We review the trial court's ruling for abuse of discretion. "A trial court does not abuse its discretion when it sustains a demurrer without leave to amend if either (a) the facts and the nature of the claims are clear and no liability exists, or (b) it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a claim." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.)[13] The burden is on the plaintiff to show that an amendment would cure the defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"[A]lthough we are required to decide ' "whether there is a reasonable possibility that the defect [in the complaint] can be cured by amendment[,] . . . [t]he burden of proving such reasonable possibility is squarely on the plaintiff" ' [citation] by 'show[ing] in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*LeBrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 212.) "The plaintiff must clearly and specifically set forth the

---

[13] The trial court denied his motion for leave to amend his first complaint on the ground that he had not complied with procedural rules including the meet and confer requirement. D'Aguiar does not appear to challenge that aspect of the court's ruling.

32

'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

The four additional defendants named in the proposed second amended complaint were referenced in the first amended complaint. One of the individuals was alleged to be an ex-council member for the City. One of the entities he named as a new defendant was the collection agency (IQ Data) he claims "published a derogatory and misrepresented collection item on [a]ppellant's credit file." D'Aguiar asserts he has a right to file a second amended complaint adding new parties. However, the case he cites for this proposition (and the statute upon which it relies, section 472) only provide that a pleading can be amended one time absent stipulation of the parties. (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676.) These authorities do not support D'Aguiar's contention the trial court erred in sustaining the demurrers without leave to amend.

D'Aguiar's arguments as to why the trial court erred in denying leave to amend his complaint are difficult to follow. The following paragraph, for example, appears verbatim in D'Aguiar's opening brief and is broadly reflective of his briefing with respect to the denial of the leave to amend. D'Aguiar asserts, "The trial court did not investigate the proposed-[second amended complaint]SAC (which was an Amended Pleading and not an Amendment to Pleading see Also, see ¶E.3.3) and with it [excluded the newly propounded evidence & allegations] in proposed-SAC. The trial court erred in its fact-finding function and Appellant was [prejudiced resulting in a miscarriage of justice]. This error is 'structural' in that it discloses, a fundamental denial of the orderly procedure required by constitutional due process. *F.P. Monier (2017) 3 Cal. 5th. 1099, 1108, 225 Cal. Rptr. 3d 504 - 5 California Forms of Pleading and Practice – Annotated § 41.10[1] (2022)."

*Monier*, the case cited by D'Aguiar in the language excerpted above, has nothing to do with the standards for sustaining a demurrer without leave to amend. D'Aguiar's complaints that the trial court "erred in its fact-finding function" demonstrate a fundamental misunderstanding about the role of the trial court. The trial court does not have a "fact-finding function" on demurrer. "On a demurrer a court's function is limited to testing the legal sufficiency of the complaint. [Citation.] 'A demurrer is simply not the appropriate procedure for determining the truth of disputed facts.' " (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.) D'Aguiar's assertions that the trial court erred by not "investigat[ing]" his proposed second amended complaint are similarly inapt.

The burden is on D'Aguiar—not the court—to allege facts sufficient to state a cause of action under any legal theory. Moreover, the facts must be material and properly pleaded, which means they cannot be " ' " ' "contentions, deductions or conclusions of fact or law." ' " ' " (*Mathews*, *supra*, 8 Cal.5th at p. 768.) Virtually all the facts D'Aguiar recites in his first amended complaint and in the proposed second amended complaint fall within the latter characterization and therefore do not assist him in showing error by the trial court either in sustaining defendants' demurrers or in denying his leave to amend.

For example, D'Aguiar asserts the BMR program was "laced with fraud and financial abuse." He cites, as an example, that a percentage of his rent went to "rental commissions." Although he contends "[t]he above is evidence of egregious financial abuse of an affordable housing beneficiary" and that he "was a target for financial abuse," D'Aguiar does not explain how these facts would support any of the causes of action in his proposed second amended complaint.

He contends the sales commission of "3 points as a buyer" and "6 points as a seller" on the sale of the BMR unit "is evidence of egregious financial abuse of an affordable housing beneficiary." As D'Aguiar never bought or sold the apartment, the

asserted facts about sales commissions appear irrelevant.  D'Aguiar does not explain how the asserted fact about rental commissions amounts to a claim under any of the causes of action he sought to allege in the proposed second amended complaint.

We have reviewed D'Aguiar's briefing, as well as the proposed second amended complaint.  We decide the trial court did not abuse its discretion in sustaining the defendants' demurrers without leave to amend.

### 4.  Judgment of Dismissal

Citing California Rules of Court, rules 3.1320(a) and 3.1320(e),[14] D'Aguiar asserts that the trial court erred in sustaining defendants' demurrers because they were filed "[j]ointly" but "not [j]ointly [and] [s]everally."  (Underscoring omitted.)  He states this is "fatal and the 'poison pill' " to the trial court's orders sustaining the demurrers.

The rules cited by D'Aguiar provide that "[e]ach ground of demurrer must be in a separate paragraph and must state whether it applies to the entire complaint, cross-complaint, or answer, or to specified causes of action or defenses" (rule 3.1320(a)) and "[a] demurrer must state, on the first page immediately below the number of the case, the name of the party filing the demurrer and the name of the party whose pleading is the subject of the demurrer" (rule 3.1320(e)).

Although D'Aguiar's argument of error under this heading is not entirely clear, he appears to contend that issues of res judicata must be evaluated with respect to each defendant individually.  We have already considered and rejected D'Aguiar's assertion that the trial court erred in sustaining the demurrer in part based on principles of res judicata.

To the extent D'Aguiar challenges the propriety of the trial court's entry of a judgment of dismissal under section 581, the trial court clearly had the statutory authority to do so if it did not abuse its discretion in denying leave to amend.  (See § 581, subd.

---

[14] Unspecified rule references are to the California Rules of Court.

(f)(1) ["The court may dismiss the complaint as to that defendant when:  [¶]  . . . Except where [s]ection 597 applies, after a demurrer to the complaint is sustained without leave to amend and either party moves for dismissal."].)  We review the trial court's order dismissing the action for abuse of discretion.  (*Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 807.)

We have already decided that the trial court did not err in denying D'Aguiar leave to amend his complaint.  D'Aguiar has not persuaded us that the court's dismissal of the action, given its conclusions that D'Aguiar had not and could not state a claim against defendants, was an abuse of discretion.

F.  *Motions for Reconsideration*

D'Aguiar asserts the trial court erred in its September 13 order denying his two motions for reconsideration.  D'Aguiar appears to argue that the trial court should have granted the motions for reconsideration based on new facts.  D'Aguiar asserts that he had "new evidence" that the City had a mandatory duty to provide a "reasonable accommodation to verify his income/assets for a government-benefit of affordable housing" through a "third-party verification" method (instead of directly asking for the unredacted documents showing his income and assets), which D'Aguiar sought to include as the 26th cause of action in his proposed second amended complaint.  (Italics omitted.)

Section 1008 governs motions for reconsideration.  "A motion for reconsideration must be based on new or different facts, circumstances or law [citation], and facts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different.'  [Citation.]  In addition, a party must provide a satisfactory explanation for failing to offer the evidence in the first instance."  (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 (*Herr*).)  We review a trial court's ruling on a

36

motion for reconsideration for abuse of discretion.[15] (*Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50.)

The trial court found that D'Aguiar's motions for reconsideration did not satisfy section 1008 in that they did not specify any new or different facts, circumstances or law. We agree.

Although framed under different headings, most of D'Aguiar's arguments related to the trial court's denial of his motions for reconsideration reduce to his contention that the trial court erred in sustaining the demurrers. D'Aguiar's belief that the trial court erred does not constitute "new circumstances" within the meaning of section 1008. (*Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500.)

Moreover, D'Aguiar does not clearly identify the new evidence that was the basis for his motions for reconsideration. To the extent he contends that the fact that he offered to show documents in person to the City (alleged in the proposed second amended complaint) is new, he does not explain why he did not raise this fact, of which he was undoubtedly aware, in the first instance. (See *Herr*, *supra*, 174 Cal.App.4th at p. 1468.) D'Aguiar's unsupported assertion that the proposed second amended complaint contained new facts or evidence merely because it added an additional cause of action and additional defendants is insufficient.

D'Aguiar's arguments that the City had an obligation to verify his financial circumstances through a third-party verification system were considered and rejected by the trial court in sustaining defendants' demurrers. For example, in its June 29 order, the trial court found "the [i]nclusionary [h]ousing [o]rdinance does not provide any obligation on City to provide or create a third-party verification system for tenants' income/asset verification." With respect to due process, the court observed that the first

---

[15] Although D'Aguiar asserts that the trial court's rulings on the motions for reconsideration must be reviewed de novo, he cites no authority holding that that is the appropriate standard of review for such decisions.

amended complaint "does not contain facts demonstrating [p]laintiff had a due process right to have a third party verification process tailored to his needs nor that he had a due process right to keep his financial documents private. Furthermore, [p]laintiff was not denied due process to procedurally navigate through the BMR [g]uideline process to request an exception. He went though the process and was lawfully denied." In his briefing in this court, D'Aguiar presents no facts or evidence that the trial court failed to consider.

As noted by the trial court, the *Daniels* decision from a federal district court in Maryland was from 2013 and was therefore not new law within the meaning of section 1008.

We conclude the trial court did not abuse its discretion in denying D'Aguiar's motions for reconsideration.

G. *December 16 Sanctions Order*

D'Aguiar challenges the December 16 order awarding sanctions pursuant to section 128.7. He contends both of defendants' sanctions motions failed to comply with the statutory 21-day safe harbor period. He further asserts the declarations supporting the motions were "ambiguous/hypothetical," unreasonable, and lacked evidence of attorney fees "being actually incurred." He also claims the second motion for sanctions (seeking $5,148) was duplicative and "moot."

Defendants counter that they complied with the 21-day safe harbor period for both sanctions motions and that D'Aguiar's other claims of error lack merit. As to the second motion for sanctions, defendants acknowledge that they had withdrawn that motion in the trial court prior to the hearing, in part because they "did not incur any fees opposing" the second motion for reconsideration that was the basis for the second motion for sanctions. Defendants state the trial court "[s]urprisingly" granted the motion and ordered D'Aguiar to pay $5,148 in attorney fees, although they had withdrawn it.

38

1. Legal Principles

Section 128.7 allows a court to impose sanctions against parties and attorneys who file papers in court frivolously or for an improper purpose. (§ 128.7, subd. (b).) Such frivolous papers can include motions for reconsideration. Subdivision (d) of section 1008—the statute governing motions for reconsideration—provides that "[a] violation of this section may be punished as a contempt and with sanctions as allowed by [s]ection 128.7." (§ 1008, subd. (d).)

The statute is "remedial, not punitive" and it provides for a "safe harbor period" to "allow a party to withdraw an objectionable document and thereby conserve judicial resources as well as save the parties the time and expense of litigating sanctions." (*Broadcast Music, Inc. v. Structured Asset Sales, LLC* (2022) 75 Cal.App.5th 596, 605 (*Broadcast Music*).)

To obtain sanctions, a litigant must follow the procedural steps set forth in section 128.7.[16] "Section 128.7 provides two procedures for the award of sanctions. A party may request sanctions, pursuant to subdivision (c)(1), or the court may impose sanctions on its own motion, pursuant to subdivision (c)(2)." (*Moofly Productions, LLC v. Favila* (2018) 24 Cal.App.5th 993, 998–999.)

When a party makes a sanctions request under subdivision (c)(1) of section 128.7—as defendants did here—the party must comply with specific procedural requirements. The notice of motion must be served on the other party at least 21 days before the motion is filed. (§ 128.7, subd. (c)(1).) If the other party does not withdraw or correct the challenged conduct, the motion may then be filed, and the court may consider the motion for sanctions. (*Ibid.*) Put another way, "[a] sanctions motion cannot be filed

---

[16] "Section 128.7 is ' "modeled, almost word for word, on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.). In examining the provisions of section 128.7, California courts may look to federal decisions interpreting the federal rule." ' " (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121, fn. 8 (*Kumar*).)

until the 22d day after service of the motion, i.e., after the 21-day safe harbor period expires." (*Broadcast Music*, *supra*, 75 Cal.App.5th at p. 605.)

"We generally review orders for monetary sanctions under the deferential abuse of discretion standard. [Citation.] However, the proper interpretation of a statute relied upon by the trial court as its authority to award sanctions is a question of law, which we review de novo." (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698.) An argument that a party "failed to comply with the safe harbor requirements of section 128.7 thus presents a pure question of law." (*Id*. at p. 700.) " 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Kumar*, *supra*, 71 Cal.App.5th at p. 1121.)

2. Motion for Leave to Produce Additional Evidence on Appeal

D'Aguiar has filed a motion in this court seeking to produce additional evidence that he asserts pertains to defendants' compliance with section 128.7. Specifically, on March 6, 2023, D'Aguiar filed a motion for "production of additional evidence on appeal" pursuant to section 909 and rule 8.252(c). The evidence is in the form of a number of "exhibits" (exhibits 20 through 33) that largely consist of e-mails between defendants' counsel (Turner) and D'Aguiar, including e-mails by which defendants electronically served the section 128.7 motions for sanctions. We understand D'Aguiar to request we take these documents as evidence in order to evaluate whether Turner served the "same" papers on him as were filed and whether the defendants violated the statutory safe harbor provisions.

Section 909 provides this court with the discretionary authority to take evidence and to sit as a trier of fact. It states, "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the

40

purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require.  This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."  (§ 909; see also rule 8.252(b) ["A party may move that the reviewing court make findings under Code of Civil Procedure section 909."].)

The California Supreme Court has directed that appellate courts' authority to make findings of fact under section 909 " 'should be exercised sparingly' " and, " '[a]bsent exceptional circumstances, no such findings should be made.' "  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted (*Zeth S.*).)  This court has stated that the power of an appellate court to take evidence under section 909 "is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings."  (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090.)

D'Aguiar has not convinced us that this situation constitutes an " 'exceptional circumstance[].' "  (*Zeth S.*, *supra*, 31 Cal.4th at p. 405, italics omitted.)

D'Aguiar does not appear to argue that the substance of the sanctions papers that were served on him were materially different than what was filed with the trial court.  We understand him to assert that the trial court should have considered the served papers along with the filed papers in determining compliance with the safe harbor period, but there appears to be no dispute in the record (as augmented with the proofs of service filed with the trial court) that defendants electronically served the motions for sanctions and thereafter filed them.  These dates are reflected in the record and we are able to ascertain compliance with the safe harbor period (addressed further below).  D'Aguiar also

41

attaches other correspondence between himself and defendants' counsel and asks us to determine that defendants' counsel acted improperly. Much of this material is already in the record on appeal. (See pt. II.B., *ante*.)

We deny D'Aguiar's March 6, 2023 motion for leave to produce additional evidence on appeal.

### 3. First Sanctions Motion

We are not persuaded by D'Aguiar that the trial court erred in granting the first motion for sanctions and ordering him to pay $5,764.

We discern no violation of the procedural steps set forth in section 128.7. Defendants electronically served the first motion for sanctions on D'Aguiar on July 26 and thereafter filed the motion on August 19. The safe harbor period expired on August 18 (that is 21 days counting from July 27 and adding two court days for electronic service). (*Broadcast Music*, *supra*, 75 Cal.App.5th at p. 605.) There is no indication in the record that D'Aguiar attempted to withdraw his motion for reconsideration that was the subject of the first motion for sanctions. Defendants therefore properly filed the motion for sanctions on August 19.

We reject D'Aguiar's conclusory assertions that the amount of the sanctions was unsupported or otherwise improper. As stated by one court, a "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the court will "treat the issue as abandoned." (*Benach*, *supra*, 149 Cal.App.4th at p. 852.) Substantial evidence in the form of e-mail exchanges between D'Aguiar and defendants' counsel supports the trial court's conclusion that D'Aguiar had filed his first motion for reconsideration for the purpose of harassing defendants. Further, the record reflects that the sanctions amount of $5,764 was supported by evidence contained in the Turner declaration filed on August 19.

42

4. Second Sanctions Motion

We reach a different conclusion on the order on the second motion for sanctions. For the reasons explained below, the second sanctions motion did not comply with the safe harbor provision of section 128.7.

As described above, sanctions cannot be filed until the 22d day after service of the sanctions motion. (*Transcon Financial, Inc. v. Reid & Hellyer, APC* (2022) 81 Cal.App.5th 547, 551.) "Moreover, the law requires strict compliance with the safe harbor provisions. [Citation.] Failure to comply with the safe harbor provisions 'precludes an award of sanctions.' " (*Ibid.*)

In this case, the court erred by concluding that defendants had complied with the safe harbor provisions. Defendants served the second sanctions motions electronically on August 3. Twenty-one days from that date was August 24. The safe harbor period was extended by two court days under section 1010.6, subdivision (a)(4)(B) to Friday, August 26. The first day defendants could file the second sanctions motions was Monday, August 29. The trial court therefore erred by concluding that the firm had complied with the safe harbor provisions by filing the motion on August 26. The error requires reversal of that part of the court's December 16 order granting the second sanctions motion and ordering D'Aguiar to pay $5,148 in sanctions.[17]

5. D'Aguiar's Request for Sanctions

D'Aguiar asserts that he properly requested sanctions pursuant to section 128.7 against defendants and their attorney Turner in a written opposition he submitted to the trial court. Defendants respond that this was not a procedurally proper request. We agree. As detailed above, section 128.7 sets forth specific procedural requirements that

---

[17] Because we conclude that the order granting the second sanctions motions must be reversed for failure to comply with the safe harbor period, we do not address whether the trial court erred by granting a sanctions motion that had been withdrawn.

43

D'Aguiar does not attempt to show he satisfied. We reject D'Aguiar's contention that the trial court erred in failing to grant his request for sanctions on defendants.

H. *Judicial Bias*

D'Aguiar contends Judge Takaichi—who presided over much of this action—was biased against him and, on that ground, seeks reversal of all orders issued after September 13. D'Aguiar maintains that the trial judge was biased against him because the judge (1) failed to "investigate" his proposed second amended complaint, (2) imposed sanctions, (3) calendared a number of hearings on a single day (September 13), (4) viewed him as a "vexatious litigant", and (5) was "unconsciously influenced by a personal letter" sent by opposing counsel that D'Aguiar characterizes as an improper ex parte communication.

1. Legal Principles

We "address the issue of judicial disqualification solely under the rubric of due process." (*People v. Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*).)[18] We review de novo D'Aguiar's claims related to the trial judge's impartiality. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385–386; see also *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944 (*Severson & Werson*).)

"It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. (*Freeman*, *supra*, 47 Cal.4th at p. 1006.) The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial.

---

[18] D'Aguiar does not appear to challenge the ruling denying his request to disqualify, which the trial court denied as untimely. That ruling is not listed in his notice of appeal. In any event, a " 'a petition for writ of mandate is the exclusive method of obtaining review of a denial of a judicial disqualification motion.' " (*Freeman*, *supra*, 47 Cal.4th at p. 1000.) D'Aguiar did not bring an appellate challenge by a petition for writ of mandate to the order denying his disqualification request.

[Citation.] . . . Numerous and continuous rulings against a party are not grounds for a finding of bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 (*Schmidt*).) "[A] judge's 'rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' " (*People v. Armstrong* (2019) 6 Cal.5th 735, 798 (*Armstrong*).) "Potential bias and prejudice must clearly be established by an objective standard." (*People v. Chatman* (2006) 38 Cal.4th 344, 363.)

2. Analysis

D'Aguiar does not cite any pertinent legal authority supporting the proposition that the trial court violated his due process rights. By failing to present argument grounded in any legal authority, D'Aguiar has forfeited any due process challenge. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Further, we have reviewed the record and conclude it does not support D'Aguiar's charge of judicial bias.

D'Aguiar argues the trial court was biased based on its rulings imposing sanctions and for its failure to consider his second amended complaint. We are not persuaded. The trial court, at multiple junctures, considered his requests to amend. Moreover, while it imposed sanctions, D'Aguiar does not provide any authority that the imposition of sanctions thereby demonstrates bias.

D'Aguiar's assertion of an improper "ex parte" and "personal" communication between defendants' counsel (Turner) and the trial judge is not supported by the record. We understand him to rely on a letter dated August 11, from Turner to Judge Takaichi. That letter copies "Plaintiff" on the "cc" line and therefore does not support D'Aguiar's characterization of the letter as an ex parte communication. Moreover, D'Aguiar does not point to any response in the record by the trial court to this letter and, indeed, it appears the trial court did not sign the judgment of dismissal until April 2023. D'Aguiar has not shown a due process violation by the trial court in connection with this e-mail.

45

Moreover, D'Aguiar's suggestion that the trial court viewed him as a vexatious litigant is also unsupported. While defendants referred to D'Aguiar as a vexatious litigant in certain submissions to the trial court, we discern no indication in the record that the trial court gave any weight to that characterization. The record reflects the trial court treated D'Aguiar's numerous motions with care and consideration. The court did not refer to him as a vexatious litigant. It is true that the trial court denied D'Aguiar's motions, but this circumstance does not establish judicial bias. (See *Schmidt*, *supra*, 44 Cal.App.5th at p. 589; *Armstrong*, *supra*, 6 Cal.5th at p. 798.)

D'Aguiar has also not shown judicial bias in the trial court's decision to calendar four of his motions on a single day (September 13). "[A] trial court must be accorded wide latitude in the exercise of discretion to control and regulate its own calendar." (*Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 497; see also *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.) The record reflects no abuse of discretion in the court's scheduling of multiple motions brought by D'Aguiar on the same date.

We disagree with D'Aguiar that this court's decision in *Severson & Werson* supports his contention of error. The circumstances and applicable law in that case—which involved the failure of party to give the required statutory notice of five days for a restraining order hearing (*Severson & Werson*, *supra*, 37 Cal.App.5th at pp. 948–949)—are materially different from the circumstances here. We further note that, although D'Aguiar did not appear at the hearing, the court had issued a tentative ruling prior to that hearing and thereafter noted at the hearing that its tentative ruling had not been contested.

Our review of the record reveals nothing that suggests "a reasonable person would entertain doubts concerning the judge's impartiality" (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776) or that " 'would cause us to lack confidence in the fairness of the proceedings such as would necessitate reversal.' " (*Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1008.)

We reject D'Aguiar's arguments of improper judicial bias and/or a violation of his due process rights.

I. *Discovery Issues, Protective Order, and Discovery Sanctions*

D'Aguiar contends the trial court erred in granting defendants' motion for a protective order and imposing discovery sanctions. D'Aguiar further asserts defendants engaged in "stonewalling of discovery" and improper conduct related to discovery.

In a November 3 minute order ruling on defendants' motion for a protective order, the trial court set out the chronology of litigation in the matter, noting that it had sustained all defendants' demurrers without leave to amend and denied plaintiff's motion for reconsideration of those decisions by September 12. Subsequent to those orders, D'Aguiar filed on September 19 a motion to compel further responses to the demand for production of documents and form interrogatories.

The trial court found that, given its prior rulings, "there are no viable causes of action or claims of plaintiff against any defendant in this action, and therefore, no basis for plaintiff to serve demand for production of documents or form interrogatories on any defendant or to file a motion to compel further responses." The court granted defendants' motion for protective order and relieved defendants from the requirement to provide or serve responses to the demand for production of documents or to form interrogatories.

With respect to defendants' request for discovery sanctions, the court found that "plaintiff's serving of the demand for production of documents and form interrogatories, and maintaining insistence that defendants serve responses, is an abuse of the discovery process." It ordered D'Aguiar to pay to defendants "attorneys fees of $2,244 as sanctions."

" '[T]he issuance and formulation of protective orders are to a large extent discretionary. [Citations.] Ruling on motions for protective orders will not be disturbed absent an abuse of discretion." (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 316–317 (*Nativi*); see also *People ex rel. Harris v. Sarpas* (2014) 225

47

Cal.App.4th 1539, 1552 [determining substantial evidence supported finding that interrogatories were "unwarrantedly oppressive, or unduly burdensome or expensive"].) "Where a party must resort to the courts, 'the burden is on the party seeking the protective order to show good cause for whatever order is sought.' " (*Nativi*, at p. 318.)

D'Aguiar primarily asserts the trial court erred because defendants did not " '[p]romptly' " bring their motion for protective order in violation of section 2030.090, subdivision (a).[19] "[A]s to the timeliness of the motion for a protective order, the promptness of the request turns on the facts." (*Nativi*, *supra*, 223 Cal.App.4th at p. 317 [construing substantially similar language in § 2025.420, subd. (a): "Before, during, or after a deposition, any party, any deponent, or any other affected natural person or organization may promptly move for a protective order."].)

We are not persuaded that defendants' motion for a protective order was not promptly filed. The record reflects D'Aguiar propounded his discovery on July 5 and July 6 and defendants filed and served their motion for protective order on August 5. Although D'Aguiar asserts that the motion for a protective order "must be" sought within 30 days, he does not cite any statute or rule for this proposition. Instead, he cites a secondary source that asserts that the motion must be filed within the 30-day period in which to respond to interrogatories or any objections may be deemed waived under section 2030.290, subdivision (a). As the trial court did not rely on waiver, this practical suggestion drawn from a secondary source is inapplicable. D'Aguiar has not shown the trial court erred in granting the protective order.

"We review the trial court's imposition of discovery sanctions for an abuse of discretion. [Citations.] 'We view the entire record in the light most favorable to the

---

[19] "When interrogatories have been propounded, the responding party, and any other party or affected natural person or organization may promptly move for a protective order. This motion shall be accompanied by a meet and confer declaration under Section 2016.040." (§ 2030.090, subd. (a).)

court's ruling, and draw all reasonable inferences in support of it. [Citation.] . . . The trial court's decision will be reversed only "for manifest abuse exceeding the bounds of reason." ' " (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1084.)

Section 2023.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against anyone engaging in conduct amounting to a "misuse of the discovery process." (§ 2023.030.) As relevant here, misuse of the discovery process includes "Persisting, over objection and without substantial justification, in an attempt to obtain information or materials that are outside the scope of permissible discovery." (§ 2023.010, subd. (a).) The trial court found that there was no basis for D'Aguiar's discovery requests—a finding D'Aguiar does not challenge on appeal other than to argue the trial court erred in sustaining the demurrers without leave to amend.

Beyond asserting that it is "preposterous" that discovery sanctions were imposed against him, D'Aguiar does not show that the trial court abused its discretion in imposing the sanctions and in the amount of sanctions it ordered. We reject D'Aguiar's contentions with respect to discovery, the protective order, and discovery sanctions.

D'Aguiar makes conclusory assertions that defendants "stonewalled formal discovery." D'Aguiar makes no effort to link these contentions with any purported error by the trial court. He has not shown reversible error.

J. *Other Claims on Appeal*

D'Aguiar asserts defendants' attorney Turner committed prejudicial misconduct, which this court should review independently, including by sending ex parte e-mails to the trial judge, "perjury" by "falsely accus[ing] the trial court of delaying [three] signed-orders and a judgment," and failing to include D'Aguiar's objections and disapproval of proposed orders in communications with the court.

We have reviewed the record citations provided by D'Aguiar on these points. For example, D'Aguiar cites e-mails between Turner and various superior court departments

about the status of unsigned orders. They largely do not support D'Aguiar's contentions. For example, on December 14, Turner sent an e-mail to "Department 2" stating he was attaching a proposed judgment resulting from the motion for judgment heard by the court on December 8. Turner also attached D'Aguiar's objections to the proposed judgment. D'Aguiar was copied on the e-mail. The record does not support D'Aguiar's contentions that these communications were ex parte. (See *Nguyen v. Superior Court* (2007) 150 Cal.App.4th 1006, 1013, fn. 2.) Further, at least according to the text of the e-mails themselves, they did convey D'Aguiar's objections.

Nevertheless, the record does contain at least one e-mail from Turner to "Department 2" on which D'Aguiar does not appear to have been copied. In the e-mail, Turner informs the court that he is attaching a proposed order on the protective order and is also attaching e-mails with D'Aguiar "wherein [D'Aguiar] objects" to the proposed order. As D'Aguiar was apparently not copied on the e-mail, this document does appear to have been an ex parte communication with the court.

While we agree with D'Aguiar that he should have been copied on this communication, he has not demonstrated prejudice from counsel's failure to do so or that counsel engaged in a pattern of such communication.

D'Aguiar alleges that Turner's misconduct has caused him "severe emotional suffering," but he cites no authority for the proposition that this undocumented assertion constitutes reversible error.

Having reviewed the documents cited by D'Aguiar as misconduct, we decide that they either do not support his assertions or that he has failed to demonstrate prejudicial error.

We have considered D'Aguiar's remaining arguments and find no basis for reversal.

### III. DISPOSITION

The trial court's order of December 16, 2022 is reversed insofar as it grants the second sanctions motion and orders the payment of $5,148 in monetary sanctions. In all other respects, the December 16, 2022 order and the judgment are affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Danner, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
Wilson, J.




**H050663**
***D'Aguiar v. City of Campbell et al.***